IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

IAN JAY EVANS

CRIMINAL CASE NO.
1:09-CR-449-RWS-RGV

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and N.D. Ga. Cr. R. 58.1(A)(3)(a) and (b). Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and

any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(F), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this 13th day of April, 2010.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL CASE NO. 1:09-CR-449-RWS-RGV |
| IAN JAY EVANS | |

## MAGISTRATE JUDGE'S ORDER, REPORT, AND RECOMMENDATION

Defendant Ian Jay Evans is charged with conspiracy to commit mail and wire fraud through a scheme to defraud The Home Depot, Inc., and its wholly owned subsidiary, Home Depot U.S.A., Inc. (collectively, "Home Depot"), of money and property in violation of 18 U.S.C. § 1349, conspiracy to money launder in violation of 18 U.S.C. § 1956(h), and seventeen counts of money laundering in violation of 18 U.S.C. § 1957. [Doc. 1]. The government has moved to preclude Evans from mentioning in his opening statement or offering any testimony regarding his alleged good faith reliance on advice of counsel, [Doc. 12], which Evans opposes, [Doc. 23]. Evans has filed motions to dismiss the indictment for unconstitutional vagueness, [Doc. 14], and to strike surplusage from the indictment, [Doc. 24], both of which the government opposes, [Docs. 32 & 34]. Following an evidentiary hearing on the

government's motion,[1] the parties filed post-hearing briefs, [Docs. 43, 45, & 46], and the pending motions are ready for ruling. For the following reasons, Evans' motion to strike surplusage, [Doc. 24], is **DENIED**, and the undersigned **RECOMMENDS** that the government's motion to preclude improper opening statement and irrelevant testimony, [Doc. 12], be **GRANTED**, and that Evans' motion to dismiss the indictment, [Doc. 14], be **DENIED**.

## I. STATEMENT OF FACTS

Evans owned a company, Vendor Efficiencies, LLC ("Vendor Efficiencies"), which represented vendors who sold rugs to Home Depot for resale, for which Evans was paid a commission. (Tr. at 3, 13). Evans also performed other services for Home Depot and its rug vendors, for which he was paid fees. (Tr. at 3). The indictment charges that, beginning in June 2002, Evans paid kickbacks to a Home Depot purchasing agent, Doug Matheny ("Matheny"), in order to obtain business for Evans and his clients. [Doc. 1 ¶¶ 1-12]. Evans and Matheny also were partners in a company called JDJ Distributing, LLC ("JDJ"), and Matheny controlled a shell company named Xenza Consulting LLC ("Xenza"), which received a number of the alleged kickback payments from Evans. (Tr. at 3, 14). Evans asserts that he

---

[1] See Doc. 42 for a transcript of the January 14, 2010, evidentiary hearing. Citations to the evidentiary hearing transcript hereinafter will be referred to as "(Tr. at ___)." In addition, the government submitted exhibits during the hearing, which will be referred to as "(Gov. Ex. ___)."

conferred with counsel concerning his business relationship with Matheny, and he intends to raise at trial a claim of good faith reliance on the advice of counsel with regard to the conspiracy and money laundering charges in the indictment. [Doc. 23 at 2; Doc. 45 at 3-4].

At the hearing on January 14, 2010, the Court granted Evans an opportunity to make a proffer of evidence to support the advice of counsel defense at trial and to demonstrate that he could satisfy the evidentiary predicate necessary for Eleventh Circuit Special Jury Instruction 18 (Good Faith Reliance on Advice of Counsel). Evans proffered through counsel that in April 2004, attorney David Cooper ("Cooper") suggested to Evans that he seek advice from a knowledgeable lawyer about "doing business with and paying [Matheny] while [Matheny] was still at Home Depot." (Tr. at 3). Cooper allegedly told Evans that he "was not the right person to give him that advice" and suggested that Evans "talk to a lawyer who would have more knowledge on that issue." (Tr. at 3-4).

Evans then proffered that, following this discussion with Cooper, he and his wife, Lynn Evans, had various contacts with attorney John Roberts ("Roberts"), who was his divorce and bankruptcy lawyer. (Tr. at 3-4; see Gov. Exs. 3 & 4). Evans first contacted Roberts regarding his business relationship with Matheny in April 2004, after he had spoken with attorney Cooper. (Tr. at 10). Evans proffered at the

hearing evidence regarding what he and his wife discussed with attorneys Cooper and Roberts concerning his relationship with Matheny, which may be summarized as follows:

- Cooper told Evans that there could be a conflict with him "doing business with and paying" Matheny. (Tr. at 3).

- Evans brought "this situation" up with Roberts, stating that he was "in business with" Matheny at JDJ, that JDJ did not initially involve sales to Home Depot over which Matheny had authority, but that this changed when Matheny's job changed. (Tr. at 4).

- Evans told Roberts that Matheny "would be receiving fees from [Evans'] company from sales that [Matheny] had control over." (Id.).

- Evans' wife attended a meeting with her employer and, as a result of something she heard at the meeting, she subsequently asked Roberts about "the legality of [Matheny] working with [Evans] while at the same time working at Home Depot." (Tr. at 5).

- At another meeting with Roberts, Evans' wife again asked Roberts about "the issue of [Matheny] receiving money" from Evans' company while still employed at Home Depot. (Id.).

- Evans' wife asked Roberts about "Matheny still being an employee of Home Depot and at the same time being paid by the company that [Evans] owned," and that she made it clear that "Matheny was a partner in JDJ." (Tr. at 6).

- Evans' wife inquired of Roberts about "Matheny's relationship with Home Depot and JDJ at the same time,"

which satisfied her "concerns she had from [the] meeting she attended at her employer." (Tr. at 7).

- Matheny would testify that Evans told him a lawyer said that "what he was doing was legal." (Id.).

- Cooper was aware that Evans "was in business with [Matheny]." (Tr. at 8).

- Roberts would testify that Evans told him "he was in business with a Home Depot employee, that the corporation was already in business, and [Evans] wanted to know if this was legal." (Tr. at 9).

- Evans and his wife "made it clear to [Roberts] that [Matheny] was a partner of [Evans]," and that "[Evans] was indeed doing business in areas with Home Depot over which [Matheny] did have buying authority, and that money going to [Evans'] company was being divided with [Matheny]." (Tr. at 20).

The government proffered at the hearing that law enforcement agents interviewed Roberts and that Roberts indicated that "he had a very brief conversation, two minute conversation, with [Evans] about whether, if he was going to hire somebody from Home Depot, there would be a problem," but that "he was not told that [Evans was] thinking about paying this man to buy rugs at Home Depot," or about the series of checks written to Matheny's corporation, Xenza, that began in July of 2002. (Tr. at 17-18).[2] The government asserts that Roberts would

---

[2] At the January 14 hearing, the government submitted 53 checks written to Xenza and one check written to Matheny personally, which were signed by Evans. The checks were written beginning on July 14, 2002; fifty were written on Vendor

testify that he was not told Evans was paying kickbacks to Matheny and would have told him that such activity was "not right." [Doc. 43 at 14 n.3]; <u>see</u> (Gov. Exs. 3 & 4).

## II. <u>DISCUSSION</u>

### A. Evans' Motion to Dismiss the Indictment, [Doc. 14]

Evans argues that, while not labeled as such, this case is an "honest services fraud case" under 18 U.S.C. § 1346. [Doc. 14-2 at 1]. Evans asserts that "the gravamen of the government's theory of criminal liability is that an alleged undisclosed kickback scheme defrauded Home Depot because it violated Home Depot's corporate policy," and that the indictment is "replete with references to co-conspirator Matheny's breach of his fiduciary duties, undisclosed kickbacks and harm to Home depot." [<u>Id.</u> at 2]. Evans argues that the text of § 1346 "cannot give fair notice regarding the illegality of any particular course of conduct," and that the "statute offers no guidance or limiting principle to prosecutors, judges, or lawyers on how to apply the law to private affairs." [<u>Id.</u> at 3-4]. The government responds that Evans is not charged with violating § 1346 as Count 1 of the indictment alleges only that Home Depot was defrauded of "money and property" under 18 U.S.C. §§ 1341 and 1343 as objects of the conspiracy, and that Evans' argument that the

Efficiencies' accounts, and four were written on JDJ's accounts. (Tr. at 13-16; Gov. Exs. 6-60).

uncharged "honest services" offense is unconstitutionally vague is irrelevant to the conspiracy charged here. [Doc. 32 at 3, 6-7].

The honest services fraud statute, 18 U.S.C. § 1346, "provides that the term 'scheme or artifice to defraud' in the mail- and wire-fraud statutes 'includes a scheme or artifice to deprive another of the intangible right of honest services.'" United States v. Turner, 551 F.3d 657, 664 (7th Cir. 2008) (quoting 18 U.S.C. § 1346); United States v. Rybicki, 354 F.3d 124, 126-27 (2d Cir. 2003) (*en banc*) (interpreting § 1346 as "clearly prohibit[ing] a scheme or artifice to use the mails or wires to enable an officer or employee of a private entity (or a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers) purporting to act for and in the interests of his or her employer . . . secretly to act in his or her or the defendant's own interests instead, accompanied by a material misrepresentation made or omission of information disclosed to the employer") (first alteration added). The statute was enacted in response to McNally v. United States, 483 U.S. 350, 360-61 (1987), which held that the mail fraud statute could not be read as encompassing the judicially created doctrine of honest services fraud. See also United States v. deVegter, 198 F.3d 1324, 1327 (11th Cir. 1999) (holding that § 1346 reinstated the honest services theory of mail fraud previously found unconstitutional by the Supreme Court's decision in McNally). The Eleventh Circuit

recognized that pre-McNally case law divided honest services fraud into three categories: (1) persons defrauded of non-monetary, "intangible interests," (2) governmental officials "depriving their constituents of honest governmental services," and (3) private employees with "clear fiduciary duties" found guilty of defrauding employers by accepting kickbacks. deVegter, 198 F.3d at 1327. The court, in construing § 1346, broadly defined private sector honest services fraud as "a breach of a fiduciary duty and reasonably foreseeable economic harm." Id. at 1330.

Evans asserts that he is subject to an indictment for mail and wire fraud that incorporates an "unpublished, undefined, vague prosecutorial construction of Section 1346," and that the government has "cloak[ed] honest-services violations under the guise of mail and wire fraud conspiracy." [Doc. 14-2 at 6]. Evans points out that the government separately charged Matheny with honest services fraud using the same allegations as in this case and characterized Home Depot's interest as a "right to rely on Matheny to work 'in an honest fashion,' an intangible right." [Id. at 2-3]; United States v. Matheny, Criminal No. 1:09-CR-197-RWS, [Doc. 1] (N.D. Ga. Apr. 17, 2009). Evans argues that the Court should view this case as an honest services case because the government has alleged a breach of fiduciary duty,

kickbacks, and harm to a private employer resulting from an employee's disloyalty. [Doc. 14-2 at 3].

The Court declines to read into the indictment an honest services charge that is not present. The indictment simply does not charge Evans with conspiring to commit honest services fraud in violation of § 1346; rather, as the government points out, Count 1 only references defrauding Home Depot of "money and property" in violation of §§ 1341 and 1343, as objects of the § 1349 conspiracy. [Doc. 32 at 3; Doc. 1 ¶¶ 1-12]. Paragraphs 11(a)-(g) in Count 1 identify some of the money and property losses allegedly caused by Evans and Matheny, summarized as follows:

(a)     Matheny approved and supported Home Depot's purchase of items from certain suppliers Evans represented on less than the most favorable prices and less than the most favorable other terms and conditions;

(b)     Matheny recommended the selection of Evans and his companies to provide consolidation services to Home Depot and certain of its suppliers on less than the most favorable prices and other terms and conditions;

(c)     Matheny did not seriously seek to obtain, recommend, and otherwise accept alternatives, at more favorable prices and other terms and conditions, to Evans' companies providing consolidation services;

(d)     Evans and his companies paid Matheny approximately $1.4 million in kickback payments for these activities, which Matheny did not provide to Home Depot in the course of his employment;

(e)     Matheny caused millions of dollars to be paid by Home Depot to suppliers represented by Evans, which would not have been paid by Home Depot had it known of the $1.4 million in kickback payments;

(f)     Matheny caused Home Depot to enter into contractual arrangements with certain suppliers represented by Evans, which it would not have done had it known of the $1.4 million in kickback payments; and

(g)     Matheny caused Home Depot to select Evans and his companies to provide consolidation services, which it would not have done had it known of the $1.4 million in kickbacks.

[Doc. 1 ¶¶ 11(a)-(g)].

These factual allegations and the specific charges in the indictment make it clear that Evans' attempt to recast the indictment as charging honest services fraud is without merit. Count 1 specifically charges Evans with conspiring to defraud Home Depot of money and property, not Matheny's honest services. Therefore, his arguments regarding the unconstitutionality of § 1346 are irrelevant and need not be further addressed.

Evans also moves to dismiss the remaining counts of the indictment, Counts 2 through 19, [Doc. 14 at 3-4], but his argument is likewise without merit. Count 2 charges money laundering conspiracy in violation of 18 U.S.C. §§ 1956(h), and Counts 3 through 19 charge substantive § 1957 violations. [Doc. 1 ¶ 13-20].[3] Evans

_____

[3] Section 1957 provides in relevant part: "Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a

claims that these additional counts are unconstitutionally vague because they are "predicated on the proceeds of the unlawful activities (honest services fraud) charged in Count 1." [Doc. 14 at 3-4]. However, this argument is without merit since the underlying charges pertain to a scheme to defraud Home Depot of money and property, not Matheny's honest services, and the remaining counts are therefore not unconstitutionally infirm. It is therefore **RECOMMENDED** that Evans' motion to dismiss the indictment, [Doc. 14], be **DENIED**.

**B.      Evans' Motion to Strike Surplusage from the Indictment, [Doc. 24]**

Evans argues that certain paragraphs of the indictment are unnecessary to the allegations of the offense charged in Count 2 and should be stricken as surplusage because they are "irrelevant, inflammatory and prejudicial." [Doc. 24 ¶ 1]. Specifically, Evans seeks to strike paragraphs 17 and 18 in Count 2 of the indictment, which describe financial transactions conducted by co-conspirator Matheny, on the grounds that these transactions do not involve Evans and the indictment does not allege that Evans was involved in or even aware of these transactions. [Id. at 3-4 ¶ 3].

Federal Rule of Criminal Procedure 7(d) grants the Court the authority to strike language from an indictment or information that is surplusage upon a motion

---

value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided . . . ."

by the defendant. Fed. R. Crim. P. 7(d). "A motion to strike surplusage from an indictment should not be granted 'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most exacting standard.'" United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (quoting United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990), superseded by statute on other grounds as recognized in United States v. McQueen, 86 F.3d 180, 183 (11th Cir. 1996)) (internal marks and citation omitted). However, "[t]he inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial." United States v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971).[4] See also United States v. Zabawa, 39 F.3d 279, 285 (10th Cir. 1994) ("Use of Rule 7(d) is appropriate when the allegation is not relevant, or is inflammatory or prejudicial.").

As noted earlier, Count 2 charges Evans with money laundering conspiracy in violation of 18 U.S.C. § 1956(h). The indictment alleges, among other things, that Evans conspired with Matheny to engage in monetary transactions in criminally derived property of a value greater than $10,000 and conduct financial transactions

---

[4] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

that involved the proceeds of mail and wire fraud, with the intent to promote the carrying on of a specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and control of the proceeds of unlawful activity. [Doc. 1 ¶¶ 13-18]. Under "Manner and Means," Count 2 charges that Evans and his companies conducted financial transactions by means of checks drawn on his accounts and paid to Xenza, a company controlled by Matheny, who deposited those funds into the Xenza account. These checks are listed as Transactions 1-28. [Id. at 16-17 & ¶¶ 15-16]. Paragraphs 17 and 18 of Count 2 describe financial transactions conducted by Matheny, listed as Transactions 29-41, which Evans claims are irrelevant. [Id. at 17-19 & ¶¶ 17-18].

The allegations Evans seeks to strike pertain to money laundering transactions in furtherance of the conspiracy with which he is charged. The government argues that this portion of the indictment is not surplusage but "rather describes 'means and methods' that [Evans] and his co-conspirator used to carry out the charged conspiracy." [Doc. 34 ¶ 3]. Although Evans claims that Transactions 29-41 "do not involve any action by him, at his direction or even with his knowledge," [Doc. 24 at 3 ¶ 3], the government proffers that it will introduce evidence of these transactions at trial to prove the existence and operation of the conspiracy between Evans and Matheny, [Doc. 34 ¶ 3]. Thus, Transactions 29-41 are directly relevant to the

conspiracy offense charged, even if Evans is not mentioned by name in the paragraphs pertaining to these transactions. See United States v. Meester, 762 F.2d 867, 877 (11th Cir. 1985) ("The evidence [of co-conspirator's acts] was not inadmissible simply because one or another of the appellants was not implicated in the ongoing conspiracies until after April, 1980."). Moreover, the Court finds no undue prejudice to Evans arising from the allegations in these two paragraphs pertaining to transactions Matheny carried out in furtherance of the alleged conspiracy. Evans has not met the "exacting standard" of showing that "the allegations are not relevant to the charge and are inflammatory and prejudicial." Awan, 966 F.2d at 1426.[5] Thus, Evans' motion to strike surplusage, [Doc. 24], is **DENIED**.

---

[5] Evans also asserts that even if the challenged language is not improper or has probative value, the probative value is outweighed by the prejudice it creates and would be inadmissible under Rule 403(b) of the Federal Rules of Evidence. [Doc. 24 ¶ 4]. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evans makes no argument about the prejudicial effect of the challenged language other than his earlier argument that the language is unnecessary to Count 2 and "is therefore irrelevant, immaterial and highly prejudicial." [Doc. 24 at 4 ¶ 3]. Therefore, he has not shown that the probative value of the language in these allegations would be "substantially outweighed" by unfair prejudice.

**C.**   **Government's Motion to Preclude Improper Opening Statement and Exclude Irrelevant Testimony, [Doc. 12]**

The government seeks to preclude Evans from mentioning in his opening statement or offering any evidence regarding his alleged good faith reliance on the advice of counsel "because the evidence will show that [Evans] did not fully disclose all material facts to attorney Roberts and [Evans] did not rely on advice received from attorney Roberts in any manner, conduct, or time period relevant to the indictment in this case."  [Doc. 12-2 at 1-2].  Evans responds that he sought legal advice from a licensed attorney, asked about the "legitimacy of his business relationship with Matheny," did not evade any questions from the attorney nor refuse to answer any questions, and relied upon that advice in pursuing his business relationship with Matheny in the belief that he was committing no criminal offense. [Doc. 23 at 2].

**1.**   **Evans Has Not Satisfied the Evidentiary Predicate for Receiving a Good Faith Reliance on Advice of Counsel Instruction.**

The government asserts that because Evans' proffer shows that he contacted attorney Cooper in April 2004, and subsequently contacted Roberts "no earlier than April 2004," the proffer "fails to meet the requirement that the advice be sought on future activity."  [Doc. 43 at 7-8].  Evans acknowledges, as he did at the January 14, 2010, hearing, "that the evidence of his consulting with counsel and his good faith

reliance upon the advice of counsel would not attach to any conduct that predates April 2004." [Doc. 45 at 3]. However, he argues that he may assert the advice of counsel defense regarding conduct occurring *after* he consulted attorneys Cooper and Roberts, and that "advice obtained from counsel is relevant to much of the conduct alleged in the [i]ndictment." <u>Id.</u>.[6]

"'The defense of good faith reliance on expert advice is designed to refute the government's proof that the defendant intended to commit the offense.'" <u>United States v. Langston</u>, 590 F.3d 1226, 1235 (11th Cir. 2009) (quoting <u>United States v. Johnson</u>, 730 F.2d 683, 686 (11th Cir. 1984)). "[A] defendant is not entitled to a good faith reliance instruction unless the record shows that '(1) he fully disclosed all material facts to his attorney; and (2) he relied in good faith on advice given by his attorney.'" <u>Id.</u> (quoting <u>United States v. Condon</u>, 132 F.3d 653, 656-57 (11th Cir. 1998) (*per curiam*)). <u>See</u> 11th Cir. Special Jury Instruction 18. Thus, the good faith reliance on advice of counsel instruction requires that the advice sought be for prospective conduct. <u>Id.</u>; <u>Condon</u>, 132 F.2d at 656-57; <u>United States v. Petrie</u>, 302 F.3d 1280, 1287 (11th Cir. 2002) ("In order to take advantage of this defense, the

_____

[6] Evans points out that "Count 1 . . . alleges a conspiracy extending through May 2005; Count 2 concerns twelve checks totaling $834,500.00 issued between August 3, 2004 and March 10, 2005; [and] Counts 3-19 allege transactions extending from October 19, 2004 through October 28, 2005." [Doc. 45 at 3].

defendant must show that he relied in good faith after first making a full disclosure of all facts that are relevant to the advice for which he consulted the attorney.").

### a. *Mail and Wire Fraud Conspiracy*

Evans has not established the predicate criteria for receiving a good faith reliance on advice of counsel instruction with regard to the mail and wire fraud conspiracy charged in Count 1. Evans concedes that he did not actually consult with any attorney until nearly two years into the charged conspiracy, but he maintains that the defense does apply to his post-consultation conduct. [Doc. 45 at 3]. However, Evans has not cited any authority for the proposition that he may receive the instruction with regard to a conspiracy charge where he did not seek the advice of counsel until after the conspiracy had commenced and overt acts had been carried out in furtherance of the conspiracy. The case law clearly requires that a defendant provide a full disclosure to the attorney "for the purpose of securing advice on the lawfulness of his *future* conduct." United States v. Conner, 752 F.2d 566, 574 (11th Cir. 1985) (emphasis added); United States v. Al-Shahin, 474 F.3d 941, 947-48 (7th Cir. 2007) (finding that defendants "did not receive advice from or even contact [attorney] prior to [allegedly fraudulent] accident although they did solicit his representation prior to making claims with the insurance company," and that "[t]his [was] not a situation in which the [defendants] relied on the advice of an attorney

and proceeded with their conduct"); <u>United States v. Cheek</u>, 3 F.3d 1057, 1061 (7th Cir. 1993) ("A crucial element in this defense is that 'defendant secured the advice on the lawfulness of his possible future conduct.'") (<u>quoting</u> <u>United States v. Polytarides</u>, 584 F.2d 1350, 1352 (4th Cir. 1978)). <u>See also</u> <u>United States v. Okun</u>, Criminal No. 3:08-CR-132, 2009 WL 414009, at *8 (E.D. Va. Feb. 18, 2009) ("It is critical to admissibility that the advice was received by the defendant 'before taking action.'") (<u>quoting</u> <u>United States v. O'Connor</u>, 158 F. Supp. 2d 697, 728 (E.D. Va. 2001) ("[T]he defendants in <i>O'Connor</i> already had set their scheme in motion by the time the legal advice in question was received. Thus, their attempt to rely on that advice failed because the defendants had formed the intent to carry out their scheme before they received the advice. In short, a defendant who takes 'significant steps' toward the completion of his criminal action cannot avail himself of later-received advice of counsel respecting the lawfulness of that action.") (internal citations omitted)).

Evans consulted with Cooper and Roberts nearly two years after commencing the unlawful course of conduct charged in the indictment and then allegedly "continued a course of illegal conduct begun prior to contacting counsel." <u>Id.</u> The record does not show that Evans ever spoke with an attorney for the purpose of securing advice on the lawfulness of his "possible future conduct," <u>id.</u> at 1061, as he

had already engaged in the charged conduct for a substantial period of time. Thus, Evans "did not receive advice from or even contact [an attorney] prior to [commencing the conspiracy]," and is therefore not entitled to the good faith reliance instruction with regard to Count 1. Al-Shahin, 474 F.3d at 947-48.

Even if the Court accepted Evans' argument that the good faith reliance instruction applies to conduct in furtherance of the mail and wire fraud conspiracy occurring after he consulted Roberts in April 2004, he would still not be entitled to the instruction because he has not shown that he made a full disclosure of all material facts to Roberts. "The evidentiary predicate for this defense is that the defendant 'fully disclosed all material facts to his attorney' and 'relied in good faith on the advice given by his attorney.'" Petrie, 302 F.3d at 1287 (quoting Condon, 132 F.3d at 656). See also Langston, 590 F.3d at 1235; Conner, 752 F.2d at 574; United States v. Kenney, 911 F.2d 315, 322 (9th Cir. 1990) ("In order to qualify for an advice of counsel instruction the appellant must show that there was full disclosure to the attorney of all material facts, and that he relied in good faith on the attorney's recommended course of conduct."). "Thus, 'a defendant who would rely on an advice-of-counsel defense is required to have disclosed all pertinent information in his possession to his attorney.'" United States v. Rooney, 122 F.3d 1058, 1997 WL 408033, at *3-4 (2d Cir. 1997) (unpublished) (quoting United States v. Beech-Nut

Nutrition Corp., 871 F.2d 1181, 1194 (2d Cir. 1989)). "The district court is required to give this instruction if there is any foundation in the evidence sufficient to bring the issue into the case, even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility." United States v. DeFries, 129 F.3d 1293, 1308-09 (D.C. Cir. 1997) (*per curiam*) (internal marks and citations omitted).

Evans argues that he made a full disclosure in that he "did seek legal advice for payments he intended to make and actually made in 2004 and 2005 to [Matheny], and did provide sufficient information to his attorneys to satisfy the disclosure requirement." [Doc. 45 at 5]. Evans points out that the government acknowledges that he "disclosed to [Cooper] that he was in business with [Matheny] and paying [Matheny] while [Matheny] was still employed at Home Depot," that he "disclosed to [Roberts] that he and [Matheny] were in business together while Matheny was an employee of Home Depot and that Matheny would be receiving fees from [his] company from sales to Home Depot over which [Matheny] had control," that he and his wife "made it clear to [Roberts] that [Matheny] was a partner of [his]," and that "[Evans] was indeed doing business in areas with Home Depot over which Matheny did have buying authority, and that money going to [Evans'] company was being divided with [Matheny]." Id. at 5-6]; (Tr. at 20). Evans asserts that while the government "spends much of its brief arguing that [Evans] could have given more

information to [Roberts] than he gave and that his lack of thoroughness defeats the advice of counsel instruction," he did inform counsel of the "<u>key, primary, pertinent facts</u>." [Doc. 45 at 6 (alterations added, emphasis in original)].

The government argues that Evans' proffer at the January 14 hearing avoided a substantive recitation of what Evans told attorneys Cooper and Roberts about his "business relationship" with Matheny, thereby rendering the proffer fatally flawed. [Doc. 43 at 9]. Specifically, the government asserts that Evans has not shown that he told Roberts that he was paying Matheny for the purpose of having Home Depot buy rugs from him, or that he promised and paid Matheny one-half of the commission Evans earned from vendors he represented on sales made to Home Depot at Matheny's direction and approval. [<u>Id.</u> at 11].[7]

The Court finds that Evans has failed to establish that he fully disclosed to the attorneys he consulted the material facts regarding the conduct charged in the indictment. Specifically, Evans has not shown that he fully disclosed to Roberts all of the material facts surrounding Matheny's role in the scheme or that the payments made to Matheny were actually intended to constitute kickbacks for Matheny giving

---

[7] The government asserts that at trial it will prove that the purpose of the payments to Matheny by Evans was to secure business from Home Depot by virtue of Matheny's approval, and that although it is "not clear that [Evans] is conceding that point in his brief," he "certainly does not contend that [Cooper or Roberts] was told this bottom line fact." [Doc. 46 at 5 n.6].

Home Depot's business to his company. While Evans proffered that he disclosed to Roberts that Matheny "would be receiving fees from [his] company from sales that [Matheny] had control over," (Tr. at 4), he did not disclose that Matheny was receiving the fees as kickbacks for providing Home Depot's business to Evans and the rug vendors he represented. See Kenney, 911 F.2d at 322 (defendant not entitled to good faith reliance on advice of counsel instruction where he participated in negotiations that involved a payment of $10,000 to an individual in exchange for awarding a contract to a certain subcontractor, and later consulted his attorney about the payment and characterized it as an "interest-free loan," never mentioning that it was intended to be a bribe or kickback, which he knew were illegal,); Liss v. United States, 915 F.2d 287, 291 (7th Cir. 1990) ("[Defendant] did not inform counsel that he intended to apply for a United States passport using false identification," and instead "merely discussed in vague terms the possibility of getting identification in another name," and defendant "failed to inform counsel that his intention was not simply to call himself Gerald Lew Drazin, but rather to assume the identity of Gerald Lew Drazin, using his date of birth and social security number for purposes of avoiding being arrested on various outstanding warrants;" all of these were

"material facts which would necessarily have been relevant to counsel's formulation of a legal opinion.").[8]

Evans argues that this case is distinguishable from Kenney in that the court in that case rejected an advice of counsel instruction "based upon the fact that the [d]efendant lied to his attorney telling him that a kickback or bribe payment was an 'interest free loan.'" [Doc. 45 at 8]. However, in affirming the district court's refusal

---

[8] Evans argues that the disclosures he made "constitute substantially more disclosure than what was proffered by the defendants in Petrie, Condon, and [DeFries]." [Doc. 45 at 7]. The Eleventh Circuit in Petrie and Condon found that the defendants had not met the evidentiary predicate for good faith reliance on advice of counsel. In Petrie, the court noted that there was "no reference in the proffer of [the attorney's] testimony to any disclosure or reliance on the part of [defendant]." 302 F.3d at 1287. Thus, this case did not address the degree of disclosure necessary. In Condon, which involved charges of making false statements to the Small Business Administration ("SBA") and conspiracy to make such statements, the attorney was told "something about the [d]efendants' dealings with the SBA," but he was never told that defendant Condon received none of the $100,000 down payment that was required (the down payment that was represented to the SBA as having been paid), $50,000 of which was to be refunded back to his co-defendant. 132 F.3d at 656-57. Thus, the record showed that "material facts related to Condon's misrepresentations were not disclosed to Condon's attorney." Id. at 657. Although fewer facts were disclosed in Condon than were disclosed in the instant case, the court still emphasized that *material* disclosures were not made to the defendant's attorney and were related to actual misrepresentations by the defendant. In DeFries, which involved charges of embezzlement surrounding the defendants' unauthorized obtaining of severance payments from a union, the court did not specify the exact disclosures that were made but, rather, noted that the attorney was "generally aware of how the union operated and the degree to which the severance plans had been disclosed to the membership and auditors," and thus knew all the material facts. 129 F.3d at 1308. Thus, it is not clear that the defendants disclosed fewer facts to the attorney in DeFries or that the material facts at issue in that case were comparable to those omitted in this case.

to give an advice of counsel instruction, the <u>Kenney</u> court did not mention that the defendant had lied about or mischaracterized the financial arrangement at issue; rather, it simply held that the defendant's failure to explain to his attorney that the arrangement was intended to be a kickback or bribe indicated that he had not fully disclosed all the material facts as required to receive the good faith reliance instruction.  911 F.2d at 322.

Here, Evans proffered that he told Roberts that Matheny "would be receiving fees from [Evans'] company from sales that [Matheny] had control over," that he was "in business with" Matheny at JDJ, that JDJ did not initially involve sales to Home Depot over which Matheny was responsible, but that changed when Matheny's job changed, and that Evans' wife asked Roberts about "the legality of [Matheny] working with [Evans] while at the same time working" at Home Depot and about "the issue of [Matheny] receiving money from [Evans'] company."  (Tr. at 4-6).  However, none of these facts indicate that Evans informed Roberts that Matheny was actually receiving kickbacks from Evans and his companies for the purpose of securing Matheny's approval on Home Depot purchases of Evans' clients' rugs, or that Matheny was paid one-half of the commissions Evans earned from vendors he represented on sales made to Home Depot.  <u>See</u> [Doc. 43 at 10-11].

Evans also argues that <u>Liss</u> is distinguishable because the defendant in that case withheld from his attorney the true motive for his name change, while here Evans "accurately explained that he was sharing fees with a Home Depot employee who was in charge of buying rugs from the [d]efendant's clients," and that he never lied or withheld material information. [Doc. 45 at 8]. Contrary to Evans' contention, this case is factually similar to <u>Liss</u> in that Evans did *not* disclose all of the material information to Roberts, including that the payments Matheny received were actually kickbacks Matheny received for awarding Home Depot business to Evans and his clients in areas over which Matheny had buying authority. <u>See</u> <u>Rooney</u>, 1997 WL 408033, at *1-4 (defendant not entitled to good faith reliance defense where he fails to disclose "all pertinent information" in his possession).

Finally, Evans cites <u>DeFries</u> for the proposition that the government has put the burden on Evans, a layman, "to anticipate the information his attorney would need in rendering his opinion," and that "[i]t is for the lawyer to decide what information he needs from a client before rendering his opinion because 'clients do not typically even know which facts a lawyer might think relevant.'" [Doc. 45 at 7 (<u>quoting</u> <u>DeFries</u>, 129 F.3d at 1309)]. In <u>DeFries</u>, the government produced a "laundry list of supposedly material facts appellants allegedly did not disclose" to their attorney, focusing on the argument that the attorney was unaware of the

appellants' attempts to conceal a severance plan's existence. 129 F.3d at 1308. The court found that the attorney was "generally aware of how the union operated and the degree to which the severance plans had been disclosed to the membership and auditors," and that the defendants were thus entitled to the defense because they had disclosed the material facts. Id. Although the court noted that clients do not typically know which facts are relevant, the court did not shift the burden of discovering or ferreting out material facts to the attorney, instead reiterating that "[s]o long as the primary facts which a lawyer would think pertinent are disclosed, or the client knows the lawyer is aware of them, the predicate for an advice-of-counsel defense is laid." Id. at 1308-09. Evans still has the burden of providing a full disclosure of the material facts, an obligation he acknowledged at the hearing and which, as discussed above, he failed to satisfy. (Tr. at 21). Thus, Evans has not met the evidentiary predicate necessary to receive Eleventh Circuit Special Jury Instruction 18 with regard to the mail and wire fraud conspiracy charged in Count 1.

### b.  *Money Laundering Charges*

The Court finds that Evans has likewise failed to establish that he is entitled to the advice of counsel instruction with regard to the money laundering charges in the indictment. Count 2 charges a money laundering conspiracy that commenced

in June 2002 and continued through September 19, 2005. As with the mail and wire fraud conspiracy charged in Count 1, the alleged money laundering conspiracy was well underway before Evans sought legal advice in April 2004 regarding his business relationship with Matheny. Because Evans did not receive any advice of counsel before commencing the charged money laundering conspiracy and carrying out acts in furtherance of the conspiracy, he is not entitled to the advice of counsel instruction on Count 2 for the reasons discussed earlier with regard to the mail and wire fraud conspiracy. See Cheek, 3 F.3d at 1061; Conner, 752 F.2d at 574; Polytarides, 584 F.2d at 1352; Al-Shahin, 474 F.3d at 947-48.

Additionally, Evans is not entitled to the advice of counsel instruction with regard to the money laundering charges in Counts 3 through 19 because he did not fully disclose all material facts regarding the alleged money laundering to counsel. As discussed earlier, Evans did not disclose to Cooper or Roberts the alleged kickback arrangement he had with Matheny. His failure to inform counsel that he was paying Matheny to receive business from Home Depot and splitting his profits with Matheny were material omissions that preclude Evans from receiving the advice of counsel instruction for the money laundering charges, for the reasons stated with regard to the mail and wire fraud conspiracy. See Kenney, 911 F.2d at 322; Liss, 915 F.2d at 291. Moreover, Evans' proffer does not indicate that he ever

discussed with counsel the conduct charged in the money laundering counts, apart

from the fact that he made payments to Matheny.  See United States v. Miles, 290

F.3d 1341, 1354 (11th Cir. 2002) (*per curiam*) (affirming district court's denial of

advice of counsel instruction regarding money laundering charge where defendant

did not seek attorney's advice and attorney did not give any advice but actually

acted as a co-conspirator in the transaction).

As noted earlier, Count 2 charges that Evans conspired to violate 18 U.S.C. §§

1956 and 1957 by engaging in certain monetary transactions with proceeds of

specified unlawful activity, that is mail and wire fraud.  [Doc. 1 ¶¶ 13-18].

Specifically, it is alleged that Evans conspired to engage in monetary transactions

with mail and wire fraud proceeds with the intent to promote the carrying on of the

specified unlawful activity and to conceal and disguise the nature, location, source,

ownership, and control of the proceeds, in violation of § 1956.  [Id. ¶¶ 14(a)-(b)].

Evans also allegedly conspired to engage in monetary transactions in criminally

derived property of a value greater than $10,000, in violation of § 1957.  [Id. ¶ 14(c)].

The remaining counts of the indictment charge specific transactions as substantive

§ 1957 money laundering.  Counts 3 through 10 charge payments in excess of

$10,000 made by Vendor Efficiencies to Xenza between October 19, 2004, and March

10, 2005.  [Id. at 20-21 & ¶ 20].  Counts 11 through 14, 18, and 19 charge payments

in excess of $10,000 that Evans made to third parties other than Matheny, and Counts 15 through 17 charge intra bank transfers in excess of $10,000 made by Evans between accounts he controlled. [Id. at 21-22 & ¶ 20].[9]

While Evans told Cooper and Roberts that he was paying Matheny while Matheny was still employed by Home Depot, he did not disclose that the payments were made to promote a fraudulent scheme or to conceal and disguise the nature, location, source, ownership, and control of proceeds of the fraud. Nor did Evans disclose to counsel that he made payments to Matheny of criminally derived property of a value greater than $10,000. Evans likewise did not disclose that he made payments to Matheny through Xenza, the corporation allegedly used to secretly funnel kickback payments to Matheny. These material omissions preclude Evans from relying on the advice of counsel defense for the money laundering charges in the indictment. See Kenney, 911 F.2d at 322; Liss, 915 F.2d at 291.

## 2. Admissibility of Evidence that Evans consulted with Counsel.

While Evans has failed to establish that he is entitled to the advice of counsel jury instruction, he maintains that he should not be precluded from mentioning in opening statement and offering evidence that he consulted an attorney regarding his

---

[9] Thus, these counts do not pertain to any payments made to Matheny, and Evans has not proffered any basis on which he would rely on the advice of counsel defense for these alleged money laundering transactions.

business relationship with Matheny because it is relevant to his intent and good faith defense. [Doc. 45 at 9].[10] Evans argues that it remains a relevant fact that he sought legal counsel regarding the relationship with Matheny, even if that consultation is insufficient to merit an advice of counsel instruction, because the fact that he sought legal counsel "'tend[s] to prove that [he] lacked criminal intent.'" [Id. (quoting Kroll v. United States, 433 F.2d 1282, 1285-86 (5th Cir. 1970) & Shale v. United States, 388 F.2d 616, 618 (5th Cir. 1968))]. The government contends that evidence of events that occurred two years after the charged conduct began cannot be relevant to establish Evans' intent to commit the offenses charged, that there is no authority to support Evans' proposition that even if he failed to meet the predicate for Special Instruction 18, he should be allowed to present the evidence to the jury as relevant to the issue of "good faith," and that Federal Rule of Evidence 403 requires exclusion of the evidence. [Doc. 43 at 15-16, 18-19; Doc. 46 at 4].[11]

_____

[10] A good faith instruction is required when there are any facts to support it. United States v. Martinelli, 454 F.3d 1300, 1315-17 (11th Cir. 2006). It is thus reversible error to refuse to charge on a defense theory for which there is an evidentiary foundation and which, if believed by the jury, would be legally sufficient to render the accused innocent. United States v. Edwards, 968 F.2d 1148, 1153 (11th Cir. 1992).

[11] While issues of admissibility are, of course, reserved for the trial court, the parties have requested a pre-trial ruling on the issues raised in the government's motion. Thus, this Report and Recommendation addresses these issues based on the record presented.

Evans reads too much into the <u>Kroll</u> and <u>Shale</u> decisions on which he relies. These cases do not support his contention that a defendant who fails to meet the predicate for an advice of counsel instruction is nonetheless free to introduce evidence that he consulted with counsel in order to show lack of criminal intent. In <u>Kroll</u>, the defendants asserted that they relied in good faith on the advice of counsel in carrying out their mortgage fraud scheme, and in finding that there was sufficient evidence to support their convictions, the former Fifth Circuit noted that the "defendants were free to introduce evidence of good faith reliance upon counsel as tending to prove they lacked criminal intent," 433 F.2d at 1285-86, but they did not call as a witness the counsel upon whose advice they claimed to have relied, <u>id.</u> at 1285. Instead, the government presented evidence that the defendants were admonished by in-house counsel that their delivery of mortgages before houses were completed on the properties might be fraudulent. <u>Id.</u> Thus, in <u>Kroll</u>, the government did not oppose the introduction of evidence regarding advice the defendants received from counsel, and even presented testimony from counsel who had admonished the defendants that their conduct may be fraudulent, but the defendants did not present evidence to support their advice of counsel defense. <u>Id.</u>

In <u>Shale</u>, the defendant argued on appeal that his motion for acquittal should have been granted, in part, because he sought legal advice, but the Fifth Circuit

rejected his argument, explaining, "That appellant sought the advice of an attorney was a fact to be considered by the jury in determining intent, but it provides no automatic defense." 388 F.2d at 618. The court also noted that the record demonstrated that defendant did not make a full and complete disclosure because he never discussed with the attorney certain oral statements that were part and parcel of the scheme. Id. at 618 n.2. Thus, Shale did not involve a challenge to the admissibility of evidence that defendant sought the advice of counsel, and the court simply explained that where such evidence is presented, it does not constitute an automatic defense.[12]

While Evans may certainly present evidence regarding his intent and in support of a good faith defense without obtaining an advice of counsel instruction, the evidence must be relevant and not subject to exclusion under Rule 403. The government's motion requires the Court to consider whether the fact that Evans consulted with an attorney remains relevant to his intent and good faith, and if so,

---

[12] Evans also cites Condon, 132 F.3d at 656-57, Petrie, 302 F.3d at 1286, and Langston, 590 F.3d at 1235, for the proposition that the Eleventh Circuit frequently justifies the denial of the good faith reliance on advice of counsel instruction by "citing the trial court's admission of evidence of counsel's advice and the broader jury instruction on 'good faith defense to charge of intent to defraud.'" [Doc. 45 at 9-10]. However, like Kroll and Shale, these cases do not address the precise issue presented here regarding the government's motion and do not support the proposition that evidence that a defendant met with counsel must be admitted even where the defendant has not satisfied the showing required for an advice of counsel defense.

whether that evidence should nevertheless be excluded under Rule 403, since he has failed to show that he has a valid advice of counsel defense.

In <u>Okun</u>, the court addressed the issue of the admissibility of evidence concerning the defendant's reliance on advice of counsel and held that "evidence of the advice of counsel, whether offered in support of a full-fledged advice of counsel defense or as probative of [defendant's] knowledge [or] state of mind would be relevant only to those actions which took place after the statements of counsel were made known to the defendant."  2009 WL 414009, at *7 (<u>citing</u> <u>Polytarides</u>, 584 F.2d at 1352).  Just as the defense of good faith reliance on the advice of counsel is restricted to conduct occurring after the advice is sought and received, "[t]his restriction on evidence of advice of counsel also applies when the evidence is simply offered as relevant to the question of good faith, because such evidence cannot be relevant if the defendant 'had already manifested his intent to [take the action in question].'"  <u>Id.</u> (<u>quoting</u> <u>Polytarides</u>, 584 F.2d at 1353).  "It is critical to admissibility that the advice was received by the defendant 'before taking action.'"  <u>Id.</u> (<u>quoting</u> <u>O'Connor</u>, 158 F. Supp. 2d at 728).  Thus, the court ruled that "any evidence concerning advice received by attorneys offered by [defendant] to support either a full defense of reliance on the advice of counsel or purportedly relevant to his

knowledge or intent is only relevant respecting actions that [defendant] took after he received [ ] that advice."  Id.

The court's reasoning in Okun is persuasive, and the undersigned finds that evidence that Evans sought legal counsel in April 2004 is not relevant to the issue of his intent and good faith with regard to the conspiracy offenses charged in Counts 1 and 2, which commenced two years earlier.  [Doc. 1 ¶¶ 1-18].  As stated in Okun, "a defendant who takes 'significant steps' toward the completion of his criminal action cannot avail himself of later-received advice of counsel respecting the lawfulness of that action."  2009 WL 414009, at *8 (citing O'Connor, 158 F. Supp. 2d at 729).  Thus, evidence that Evans sought advice of counsel two years after allegedly entering into the conspiracies and undertaking acts in furtherance of the conspiracies by making numerous payments to Matheny is not relevant to his intent or good faith with regard to those offenses since he "'had already manifested his intent to [take the action in question].'"  Id. at *7 (quoting Polytarides, 584 F.2d at 1353).

Under the rationale of Okun, the fact that Evans sought advice of counsel in April 2004 may be relevant to his intent and good faith regarding the substantive money laundering charges in Counts 3 through 19, since all those transactions occurred after Evans conferred with counsel.  [Doc. 1 at 19-22 & ¶¶ 19-20].

However, even if such evidence is relevant to the § 1957 money laundering charges, the undersigned recommends excluding it under Rule 403 based on the present record because its minimal probative value is substantially outweighed by the dangers of confusing the issues and misleading the jury and the potential for undue delay and wasting time. See United States v. Alvear, 181 Fed. App. 778, 781-82 (11th Cir. 2006) (unpublished) (district court did not abuse its discretion by excluding defendant's testimony where it might have confused issues and misled the jury); United States v. Johnson, 558 F.2d 744, 746-47 (5th Cir. 1977) (district court did not abuse its discretion in excluding defendant's evidence under Rule 403 because it was "only indirectly probative of reliance" and could have resulted in unfair prejudice, danger of confusing issues, and a waste of time on collateral issues); United States v. Walrath, 16 F.3d 1223, 1993 WL 503079, at *2 (6th Cir. 1993) (*per curiam*) (unpublished) (upholding suppression under Rule 403 where evidence had insufficient probative value to outweigh confusion and prejudice).

As discussed earlier, Evans proffered that he sought advice of counsel regarding his business relationship with Matheny and paying him while he was still employed by Home Depot and had buying authority over areas in which Evans was doing business with Home Depot. However, Evans has not indicated that he sought legal counsel regarding the types of monetary transactions alleged in Counts 3

through 19. That is, Evans has not proffered that he sought advice of counsel regarding engaging in monetary transactions in criminally derived property of a value greater than $10,000. [Doc. 1 at 19-22 & ¶¶ 19-20]. Moreover, only Counts 3 through 10 pertain to payments Evans made to Matheny, and those payments were actually made to Xenza, an entity which was not disclosed to attorney Roberts. [Id. at 20-21 & ¶ 20]. The remaining money laundering counts are intra bank transfers and payments Evans made to other third parties. [Id. at 21-22 & ¶ 20]. Thus, the fact that Evans sought legal advice about his business relationship with Matheny has minimal probative value regarding his intent and good faith on the money laundering charges.

On the other hand, admitting evidence that Evans sought legal counsel only with regard to the money laundering counts, but not as to the conspiracy counts, creates a danger that the issues in the case will be confused and the jury misled since the advice Evans sought pertained to the underlying relationship with Matheny, not the money laundering transactions. Alvear, 181 Fed. App. 778, 781-82; Johnson, 558 F.2d at 746-47; Walrath, 1993 WL 503079, at *2. While limiting instructions can clear up potential confusion, it would require extraordinarily precise instructions and fact-finding to sort out and consider the evidence that Evans sought advice of counsel about his relationship with Matheny only for purposes of the money laundering charges, but not for the money laundering conspiracy or the mail and

wire fraud conspiracy, which is more closely related to the subject on which Evans

sought the advice.

Moreover, while Evans contends that he should be free to introduce the fact

that he sought legal advice, admitting that "fact" would undoubtedly lead to the

presentation of evidence about the substance of that consultation by both sides,[13]

resulting in undue delay and a waste of time on a matter that has minimal probative

value for the money laundering charges. Johnson, 558 F.2d at 746-47. Again,

allowing this evidence for the limited purpose of the substantive money laundering

charges would contribute to jury confusion since it is otherwise irrelevant to the

underlying mail and wire fraud conspiracy charge, but the substance of the

consultation more closely concerns that conduct than the money laundering

transactions. See Alvear, 181 Fed. App. 778, 781-82; Walrath, 1993 WL 503079, at *2.

Therefore, based on the present record, the undersigned **RECOMMENDS** that the

government's motion to preclude improper opening statement and exclude

irrelevant testimony, [Doc. 12], be **GRANTED**.

### III. CONCLUSION

For the foregoing reasons and cited authority, Evans' motion to strike

surplusage from the indictment, [Doc. 24], is **DENIED**, and the undersigned

---

[13] Evans proffered that he and his wife would testify about conversations with attorney Roberts, and the government indicated that Roberts would offer contrary testimony. (Tr. at 3, 5-7); [Doc. 43 at 14 n.3].

Magistrate Judge **RECOMMENDS** that the government's motion to preclude improper opening statement and exclude irrelevant testimony, [Doc. 12], be **GRANTED**, and that Evans' motion to dismiss the indictment for unconstitutional vagueness, [Doc. 14], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED and RECOMMENDED**, this 13th day of April, 2010.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE